UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

JESSICA ANNE MARIE FOUST,                    Case No. 2:23-cv-01228-AP

      Plaintiff,                              **OPINION AND ORDER**

      v.

STATE OF OREGON; REYES,
Superintendent of TRCI; RUMSEY,
Assistant Superintendent of Security;
CAPT. ARCHER, TRCI,

      Defendants.

_____

POTTER, Magistrate Judge.

      Plaintiff, an adult in custody (AIC) previously housed at the Two Rivers Correctional

Institution (TRCI), brings this action pursuant to 42 U.S.C. § 1983 and alleges that the lighting at

TRCI subjected her to inhumane conditions of confinement in violation of the Eighth

Amendment. The parties now move for summary judgment and have consented to final

**1    - OPINION AND ORDER**

disposition by the undersigned magistrate judge. *See* Fed. R. Civ. P. 73. For the reasons explained below, Plaintiff fails to raise a genuine issue of material fact to defeat summary judgment, and Defendants' motion is GRANTED.

## BACKGROUND

Plaintiff has been in custody of the Oregon Department of Corrections (ODOC) since May 2008. Thompson Decl. ¶ 3 & Att. 1 (ECF No. 45). During this time, Plaintiff was housed at TRCI from January 16, 2019 through May 8, 2019; May 15, 2019 through May 23, 2019; and October 12, 2021 through December 6, 2023. *Id.* When Plaintiff initiated this action on August 22, 2023, she was housed in unit 8, cell 49. *Id.*

Beginning in 2018, TRCI officials began replacing fluorescent lightbulbs in AIC cells with LED lightbulbs. *Id.* ¶ 6; Second Thompson Decl. ¶ 6 (ECF No. 90). Approximately eighty percent of TRCI cells now have LED lightbulbs, including cell 49 in unit 8. Thompson Decl. ¶ 6. The LED lightbulbs have different settings for daytime and nighttime hours. *Id.* The daytime setting utilizes two 4-foot LED lightbulbs and the nighttime setting utilizes one 5.3-inch LED lightbulb. *Id.* Each set of lightbulbs can be turned on at any given time, but they cannot be illuminated or turned off at the same time. *Id.* ¶ 7.

TRCI uses GreenCreative 2 pin G23 model lightbulbs for nighttime lighting. *Id.* at ¶ 10 & Att. 2. Unaltered, these lightbulbs emit approximately 320 lumens, which is a level of illumination inconsistent with nighttime lighting. *Id.* ¶ 12. ODOC has not been able to locate LED lightbulbs with lower levels of illumination, and to achieve nighttime lighting levels, an ODOC electrician modifies the G23 lightbulbs by covering a large portion of the lightbulb with black electrical tape. *Id.* & Att. 3. With these modifications, the G23 lightbulbs emit lower levels of light than that emitted by common residential nightlights. *Id.* ¶ 23.

2    - OPINION AND ORDER

According to Defendants, a low level of illumination is necessary for security purposes and to aid correctional staff in performing tier checks during nighttime hours. Thompson Decl. ¶ 8; Rumsey Decl. ¶¶ 5-6 (ECF No. 44). Defendants maintain that tier checks help ensure the safety of AICs and TRCI staff by confirming the presence of AICs in their cells and preventing escape attempts, incidents of self-harm, medical emergencies, and other situations that may pose a threat to institutional security or AIC safety. Rumsey Decl. ¶ 6.

On November 7, 2024 and November 22, 2024, a TRCI electrician, G. Thompson, tested nighttime lighting levels in cell 49, unit 8. Thompson Decl. ¶¶ 14-22.[1] The nighttime lighting levels were measured under the following conditions: (1) during daytime hours, with the housing unit's dayroom lighting on, the cell's nighttime lighting on, and the cell door closed; (2) during early morning hours (before the sun had risen), with the unit's dayroom lighting on, the cell's nighttime lighting on, and the cell door closed; and (3) during early morning hours (before the sun had risen), with the unit's dayroom lighting on, the cell's nighttime lighting on, and the cell door open. *Id.* ¶¶ 15-16, 18-19, 21.

The first set of conditions measured an output of 7.4 lumens, the second set of conditions measured an output of 4.1 lumens, and the third set of conditions measured an output of 6.5 lumens. *Id.* ¶¶ 17, 20, 21. According to Defendants, each of these measurements was well below the typical lumen output for residential nightlights. *Id.* ¶¶ 22-23.

Plaintiff counters that the information provided by Defendants regarding the lighting is false and her exposure to continuous illumination at TRCI constituted cruel and unusual punishment under the Eighth Amendment. Plaintiff contends that Defendants "intentionally

---

[1] Thompson has been a journeyman electrician for 29 years and has been employed by ODOC in that capacity since October 15, 2007. Thompson Decl. ¶ 1.

**3    - OPINION AND ORDER**

ignored the plaintiff's requests to be free from the toxic exposure of constant illumination in her cell inflicting physical injuries and causing phycological damage." Pl.'s Mot. Summ. J. at 1 (ECF No. 28). The parties now move for summary judgment.[2]

## **DISCUSSION**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing the absence of any genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this initial burden is met, the burden shifts to the non-moving party to demonstrate through the production of probative evidence that an issue of fact remains to be tried. *Id*.

On cross-motions for summary judgment, the Court considers each motion separately on its own merits and gives "the nonmoving party in each instance the benefit of all reasonable inferences." *Zabriskie v. Fed. Nat'l Mortg. Ass'n*, 940 F.3d 1022, 1026 (9th Cir. 2019) (citation omitted); *Fair Housing Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The Court "does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999). "Where the record taken as a whole could not lead a rational trier of

---

[2] Separately, Plaintiff moved to strike all of Defendants pleadings, arguing that the Attorney General was illegally representing them. The Court denied that request because ORS § 30.285(3) allows the Attorney General to represent state employees. ECF No. 98. Plaintiff objected to that order and argued that the Attorney General should have declined to represent the Defendants because they engaged in "malfeasance." ECF No. 99. As discussed in this opinion, the Court disagrees with Plaintiff's characterization of the facts. But even if the Court agreed, the decision of the Attorney General to represent state employees is a matter left to the State and protected by the Eleventh Amendment. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) (holding that "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law"). As such, this Court has no role in reviewing that decision.

**4    - OPINION AND ORDER**

fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

Because Plaintiff is self-represented, the Court construes her filings liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Walker v. Beard*, 789 F.3d 1125, 1133 (9th Cir. 2015). However, Plaintiff is not relieved of the "obligation to show a genuine issue of material fact for trial through the presentation of specific, admissible evidence." *Epling v. Komathy*, No. CV 10-5862-GAF (RNB), 2011 WL 13142131 (C.D. Cal. Dec. 5, 2011).

To sustain an Eighth Amendment claim, Plaintiff must first make an objective showing that Defendants' conduct deprived her of something "sufficiently serious." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). A deprivation is sufficiently serious when the defendant's alleged act or omission results "in the denial of 'the minimal civilized measure of life's necessities.'" *Id.* (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981)). Plaintiff must then show that Defendants acted with deliberate indifference, *i.e.*, that Defendants were aware that the lighting conditions posed a substantial risk of serious harm to Plaintiff's health or safety and they nonetheless disregarded that risk. *Id.* at 837; *Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir. 2009) ("It is well settled that '[d]eliberate indifference occurs when [an] official acted *or failed to act* despite his knowledge of a substantial risk of serious harm.'") (citation omitted).

The Ninth Circuit has recognized that continuous illumination in correctional facilities can pose an objective risk of harm. *See Grenning v. Miller-Stout*, 739 F.3d 1235, 1239-41 (9th Cir. 2014); *Chappell v. Mandeville*, 706 F.3d 1052, 1057-58 (9th Cir. 2013); *Keenan v. Hall*, 83 F.3d 1083, 1088, 1090-91 (9th Cir. 1996) (finding a genuine issue of fact where the plaintiff alleged that constant illumination from two large fluorescent lights for six months caused severe sleep deprivation and other psychological problems). To determine whether continuous

**5    - OPINION AND ORDER**

illumination rises to the level of a sufficiently serious deprivation, the Court considers several factors, including the level of illumination, the length of time an AIC was exposed to the illumination, and the penological interest used to justify it. *See Grenning*, 739 F.3d at 1240-41 (reversing summary judgment where the record did not establish the level of illumination and the defendants failed to show a legitimate penological interest); *see also Chappell*, 706 at 1057-59 (discussing relevant factors).

The record in this case reflects that the illumination levels measured in Plaintiff's cell were consistent with or lower than residential nightlights. Thompson Decl. ¶ 23. As found by this Court, the Court of Appeals for the Ninth Circuit, and an Oregon trial court, the nighttime lighting at TRCI does not rise to the level of an objectively severe deprivation under the Eighth Amendment. *See Emery v. Reyes*, Case No. 2:22-cv-1977-MC, 2024 WL 4555173, at *2 (D. Or. Oct. 23, 2024) (finding no Eighth Amendment violation arising from continuous cell lighting at TRCI), *aff'd sub nom, Emery v. Oregon Dept. of Corr.*, No. 24-6602, 2025 WL 2977821 (9th Cir. Oct. 22, 2025) (affirming summary judgment "because Emery failed to raise a genuine dispute of material fact as to whether defendants subjected him to a sufficiently serious deprivation that denied him the minimal civilized measure of life's necessities"); Hallman Decl. Att. 1 at 10 (ECF No. 43) (state court habeas opinion in *Ferguson v. Reyes*, Case No. 21CV43714, finding no constitutional violation because TRCI "lighting at night is set as low as possible using a masked single LED lightbulb" and "does not constitute a cognizable indignity and is necessary for safety and security"). This Court recently denied a TRCI inmate's request for a preliminary injunction requiring TRCI to turn off the "main" lights in his cell because the record revealed that the plaintiff was "not subjected to the kind of incessant bright lighting that

**6    - OPINION AND ORDER**

might offend the Eighth Amendment in the absence of a legitimate penological justification." *Turnidge v. ODOC*, No. 2:25-CV-01435-MO, 2026 WL 252559, at *2 (D. Or. Jan. 29, 2026).

Moreover, Plaintiff's own expert opines that "levels well below five lux[] are generally considered necessary for proper sleep," and the nighttime setting of LED lightbulbs at TRCI emit illumination levels well below five lux. Urrutia-Moldes Decl. ¶ 14 (ECF No. 87); Second Thompson Decl. ¶ 4(a)-(c) (indicating that the lumen measurements in Plaintiff's cell were the equivalent of 1.78 to 2.3 lux, depending on the conditions). Based on this evidence, the nighttime lighting conditions in TRCI cells do not establish a sufficiently serious deprivation.

Plaintiff disputes Defendants' evidence and asserts that Thompson and Rumsey have "committed perjury" and submitted "false" evidence to the Court regarding the installation of LED lightbulbs and the asserted penological interest in low levels of nighttime lighting. Pl.'s Reply at 5-6, 11-18, 20, 27, 31 (ECF No. 83). At the outset, the Court notes that "Plaintiff cannot create a genuine issue of fact simply by proffering conclusory allegations that witnesses are lying." *McKenzie v. Jorizzo*, No. 1:13-CV-1302-AA, 2015 WL 127826, at *5 n.3 (D. Or. Jan. 6, 2015), *aff'd*, 668 F. App'x 738 (9th Cir. 2016).

In particular, Plaintiff disputes whether Thompson tested the illumination levels in her TRCI cell and questions whether the lighting in her cell was retrofitted with the modified G23 lightbulbs. But Plaintiff's own Complaint, dated August 22, 2023, challenged the brightness of LED lighting in her cell; if Plaintiff's cell had not been retrofitted with G23 lightbulbs, it would have had fluorescent lighting. Compl. ¶¶ 16, 23, 26 (ECF No. 2).[3] It is unclear how this allegation even helps her claim.

---

[3] Plaintiff's Complaint refers to "LCD" lightbulbs and describes lightbulbs similar to the description provided by Defendants. *Compare* Compl. ¶ 16 *with* Thompson Decl. ¶ 6. The Court presumes Plaintiff intended to reference LED lightbulbs.

**7    - OPINION AND ORDER**

Plaintiff also submits identical declarations—save for the dates when they were incarcerated—from other AICs to support her allegation that the LED lightbulbs were "not taped or covered in any way shape or form." *See* Gray Decl.; Dalton Decl.; Lincoln Decl. (ECF Nos. 84-86); *see also* Eris Decl.; Pyrson Decl. (ECF Nos. 96-97) (stating that the lightbulbs could be seen "through the glass that covers them"). But these are the type of uncorroborated, self-serving statements that cannot be used to defeat summary judgment. *See Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1061 (9th Cir.2002) (explaining that uncorroborated allegations and "self-serving testimony" do not create a genuine issue of material fact).

Thompson avers under penalty of perjury that he has "never installed a G23 lightbulb that was not taped" and that "G23 lightbulbs are installed behind a refracting lens, which helps diffuse the light," making it "difficult, if not impossible, to determine whether the lightbulbs are taped without removing the lens." Second Thompson Decl. ¶¶ 11-12. The AIC declarations do not contradict this evidence. Declarant Pyrson was housed at TRCI in 2017, before the transition to LED lighting, and Declarants Dalton, Gray, Lincoln, and Eris do not specify the time period or the cells in which they allegedly observed LED lightbulbs, make no allegation that they removed the refracting lens to examine these lights when they make the claim that they were not taped, and offer no information about the lighting in Plaintiff's cell. Gray Decl.; Dalton Decl.; Lincoln Decl.; Eris Decl.; Pyrson Decl.

Plaintiff submits no other evidence to support her conclusory allegation that Thompson is "lying" about the installation of modified LED lightbulbs in her cell, and she has no personal knowledge of tests performed by Thompson in November 2024, when Plaintiff was no longer housed at TRCI. Ultimately, Plaintiff proffers nothing more than conclusory and unfounded accusations that the LED lightbulbs in her cell were not modified, and "mere allegation and

**8    - OPINION AND ORDER**

speculation do not create a factual dispute for purposes of summary judgment." *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996).

Plaintiff also fails to submit evidence, such as medical or mental health records, to support her allegations that the nighttime lighting in her cell caused serious physical and mental health issues. Instead, Plaintiff relies on unauthenticated scientific literature and her expert's declaration that continuous exposure to high levels of light and light pollution, generally, can cause health hazards and exacerbate mental and physical conditions. Pl.'s Mot. Summ. J. & Exs.; Pl.'s Expert Decl. (ECF No. 88); Urrutia-Moldes Decl. ¶¶ 6, 11.[4] Defendants do not dispute that constant exposure to high levels of illumination can be detrimental to an AIC's health and well-being. However, as Defendants cogently note, "the issue before this Court is much more specific—i.e., whether the lighting at TRCI was excessively bright so as to offend the Eighth Amendment of the U.S. Constitution." Defs.' Resp. & Cross Mot. Summ. J. at 7 (ECF No. 42). Plaintiff's expert declaration and the literature cited do not address the specific lighting levels at TRCI or in Plaintiff's former cell, and they are irrelevant to the questions before the Court.

It may well be that the nighttime lighting at TRCI was not comfortable for Plaintiff and did not foster restful sleeping conditions for her. However, "to constitute punishment, the harm

---

[4] Plaintiff also submitted an April 2025 declaration from a psychiatric expert. However, the expert's conclusions are entirely redacted aside from the statement that Plaintiff's lab reports and physical symptoms are "suggestive of cutaneous lymphoma, a form of cancer, and this in turn suggests [an underlying virus]." Fisher Decl. at 7 (ECF No. 83-1). Plaintiff presents no evidence that she has been diagnosed with lymphoma, that the lighting levels in her cell can cause lymphoma, or that the named Defendants knew of this harm and nonetheless disregarded it.

Plaintiff also posits that she is qualified as an expert "on the subject matter of light toxicity" based on her study of the scientific literature, and she submits her own "expert" declaration. *See* Pl.'s Reply at 6; Pl.'s Expert Decl. (ECF No. 88). Plaintiff is in no way qualified as an expert on this subject. Fed. R. Evid. 702 (allowing testimony by a "witness who is qualified as an expert by knowledge, skill, experience, training, or education").

**9    - OPINION AND ORDER**

or disability caused by the government's action must either significantly exceed, or be independent of, the inherent discomforts of confinement." *Demery v. Arpaio*, 378 F.3d 1020, 1030 (9th Cir. 2004). Plaintiff presents no evidence suggesting that the TRCI lighting levels exceeded the inherent discomforts of confinement and constituted a sufficiently serious deprivation to sustain a claim under the Eighth Amendment.

Plaintiff also fails to show that Defendants possessed the requisite subjective state of mind to sustain an Eighth Amendment claim and knowingly disregarded a substantial risk of serious harm. As noted above, TRCI officials installed LED lightbulbs with the lowest setting available and modified the lightbulbs to emit illumination levels similar to or lower than residential nightlights. These efforts belie Plaintiff's argument that Defendants acted with malicious intent and disregarded a known risk of harm to Plaintiff's health. *See* Pl.'s Mot. for Summ. J. at 4 (alleging that "[t]his constant illumination is punitive in nature and intended solely to harshen living conditions"); Pl.'s Reply at 39 (arguing that the lighting in her TRCI was "torture" and intended to "punish" her). Plaintiff presents no evidence suggesting that Defendants maintain nighttime lighting levels to intentionally disrupt AICs' sleep or to worsen their conditions of confinement. Instead, Defendants assert a valid penological interest in maintaining a low level of nighttime illumination to facilitate security checks. Rumsey Decl. ¶¶ 5-6. For these reasons, Plaintiff cannot sustain her Eighth Amendment claim. And Defendant's are entitled to summary judgment.

Alternatively, Defendants are entitled to qualified immunity. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly,* 580 U.S. 73, 78-79 (2017) (per curiam) (citation omitted). To be "clearly established," the asserted right "must be

**10    - OPINION AND ORDER**

sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards,* 566 U.S. 658, 664 (2012) (brackets and internal quotation marks omitted). While qualified immunity does not "require a case directly on point, [] existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *see also Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) ("Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted.").

It is not clearly established that a low level of continuous lighting in a correctional facility, in and of itself, violates the Eighth Amendment. *Grenning*, 739 F.3d at 1238-39; *Chappell*, 706 F.3d at 1058. Rather, cases involving prison illumination levels are inherently "fact-driven." *Chappell*, 706 F.3d at 1058. Here, Defendants have made efforts to dim nighttime lighting in TRCI cells to levels consistent with residential nightlights, and they proffer a legitimate penological interest in maintaining some level of illumination during nighttime hours. Given this record, reasonable correctional officials in Defendants' position would not have believed that their conduct violated a clearly established constitutional right. *See id.* (finding it was not clearly established "that constant illumination violates the Eighth Amendment when done for a legitimate penological purpose"); *Emery*, 2024 WL 4555173, at *2-3 (finding that TRCI officials were entitled to qualified immunity regarding nighttime lighting at TRCI); *Perez v. Moore*, Case No.18-CV-04856-SI, 2020 WL 2793647, at *11 (N.D. Cal. May 29, 2020) (noting that the "law has not become any clearer since *Grenning* and *Chappell* on the constitutionality of continuous illumination of a cell").

**11    - OPINION AND ORDER**

Accordingly, Plaintiff fails to raise a genuine issue of material fact and summary judgment is appropriate.

## **CONCLUSION**

Defendants' Motion for Summary Judgment (ECF No. 42) is GRANTED, Plaintiff's Motion for Summary Judgment (ECF No. 28) is DENIED, and this action is DISMISSED.

IT IS SO ORDERED.

DATED this 12th day of March, 2026.


/s/Amy E. Potter
AMY E. POTTER
United States Magistrate Judge

**12** **- OPINION AND ORDER**